# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51201-7-II |
| Respondent, | |
| v. | |
| ANTHONY GLEN HOUCK, | PUBLISHED OPINION |
| Appellant. | |

CRUSER, J. — Anthony Houck appeals the trial court's imposition of two community custody conditions and certain legal financial obligations (LFOs) following his convictions for unlawful manufacture of a controlled substance and unlawful possession of a controlled substance with intent to deliver. Houck argues that the trial court abused its discretion when it imposed a condition of community custody that prohibited him from associating with known drug users and sellers and erred by imposing a condition of community custody that prohibited possession or consumption of medical marijuana under the Medical Use of Cannabis Act, ch. 69.51A RCW. Houck also challenges the trial court's imposition of LFOs and interest provision.

We hold that the trial court's imposition of community custody conditions was proper, but that the $200 criminal filing fee and interest provision must be stricken. We also hold that the State bears the burden of demonstrating that Houck's deoxyribonucleic acid (DNA) has not previously been collected and remand for the trial court to consider whether the DNA collection fee should be imposed. Accordingly, we affirm in part and remand for further proceedings.

No. 51201-7-II

A jury convicted Anthony Houck of unlawful manufacture of a controlled substance and unlawful possession of a controlled substance with intent to deliver. The trial court sentenced Houck to a term of confinement and community custody. The trial court imposed the following relevant community custody conditions:

> (B) While on community placement or community custody, the defendant shall: . . . (4) not consume controlled substances except pursuant to lawfully issued prescriptions; . . . .
> . . . .
> [x] have no contact with known drug users/sellers except in [treatment] setting.

Clerk's Papers (CP) at 152.

As a part of Houck's sentence, the trial court ordered Houck to pay the $500 crime victim penalty assessment, $200 criminal filing fee, and $100 DNA collection fee. The trial court waived interest on all fees until 90 days following his release from custody.

Houck appeals the trial court's imposition of the aforementioned community custody conditions, the criminal filing fee, the DNA collection fee, and the interest provision.

ANALYSIS

I. COMMUNITY CUSTODY CONDITIONS

Houck challenges the community custody conditions prohibiting him from association with known drug users and sellers and prohibiting him from consuming controlled substances except pursuant to lawfully issued prescriptions. Houck argues that the condition prohibiting association with known drug users and sellers is unconstitutionally vague. He further argues that the trial court did not have lawful authority to impose the condition prohibiting him from consuming controlled substances except pursuant to lawfully issued prescriptions because the condition subjects him to

2

criminal sanctions if he possesses or consumes marijuana for medical purposes in violation of the Medical Use of Cannabis Act. We disagree.

## A. LEGAL PRINCIPLES

When a prison term is imposed for a felony drug offense, a sentencing court must impose an additional term of community custody. RCW 9.94A.701(3)(c).[1] "Washington sentencing courts are required to impose certain community custody conditions in specified circumstances and may impose others." *State v. Bahl*, 164 Wn.2d 739, 744, 193 P.3d 678 (2008); RCW 9.94A.703.

RCW 9.94A.703 prescribes community custody conditions that are mandatory, waivable, or discretionary. A court *may* impose a condition requiring an offender to refrain from direct or indirect contact with a specified class of individuals. RCW 9.94A.703(3)(b). Unless specifically waived by the court, the court *must* order an offender to refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions as part of any term of community custody. RCW 9.94A.703(2)(c).

## B. ASSOCIATION WITH KNOWN DRUG USERS AND SELLERS

Houck argues that the community custody condition barring him from associating with known drug users and sellers is unconstitutionally vague.

---

[1] RCW 9.94A.701(3)(c) states that a court shall sentence an offender to community custody for one year when the court sentences the person to the custody of the Department of Corrections (DOC) for a felony offense under ch. 69.50 or 69.52 RCW. Houck's offenses include two felony offenses under RCW 69.50.401(1) and (2)(b).

1.      *Standard of Review and Principles of Law*

The due process vagueness doctrine requires that citizens have fair warning of proscribed behavior.  U.S. CONST. amend. XIV; WASH. CONST. art. I, § 3; *Bahl*, 164 Wn.2d at 752.  A community custody condition that does not provide fair warning is unconstitutionally vague.  *Id*. at 753.  A community custody condition does not provide fair warning if (1) "it does not sufficiently define the proscribed conduct so an ordinary person can understand the prohibition" or (2) "it does not provide sufficiently ascertainable standards to protect against arbitrary enforcement."  *State v. Padilla*, 190 Wn.2d 672, 677, 416 P.3d 712 (2018).

A community custody condition is valid if a person of ordinary intelligence can understand what behavior a condition forbids, given the context in which its terms are used.  *State v. Hai Minh Nguyen*, 191 Wn.2d 671, 679, 425 P.3d 847 (2018).  A sufficiently clear condition can survive a vagueness challenge "'notwithstanding some possible areas of disagreement.'"  *Bahl*, 164 Wn.2d at 754 (quoting *Spokane v. Douglass*, 115 Wn.2d 171, 179, 795 P.2d 693 (1990)).  Additionally, it is not necessary that a condition provide "'complete certainty the exact point at which his actions would be classified as prohibited conduct.'"  *Padilla*, 190 Wn.2d at 677 (internal quotation marks omitted) (quoting *State v. Sanchez Valencia*, 169 Wn.2d 782, 793, 239 P.3d 1059 (2010)).

We review a community custody condition for abuse of discretion and will reverse only if the condition is manifestly unreasonable.  *Sanchez Valencia*, 169 Wn.2d at 791-92.  A trial court necessarily abuses its discretion by imposing an unconstitutionally vague community custody condition.  *Padilla*, 190 Wn.2d at 677.  We do not presume that a community custody condition is constitutional.  *Sanchez Valencia*, 169 Wn.2d at 793.

2.       *"Known" Drug Users and Sellers*

Houck argues that the community custody condition that prohibits him from "associating with 'known drug users/sellers, except in treatment settings'" is unconstitutionally vague because it is unclear who must have knowledge that a person is a "known" drug user or seller.  Appellant's Opening Br. at 6-8.  Houck contends that because it is unclear who must have the knowledge that a person is a "known" drug user or seller, the condition is subject to arbitrary enforcement.

Houck relies on *State v. Irwin*, 191 Wn. App. 644, 364 P.3d 830 (2015), which held that a community custody condition that prohibits "frequenting areas where minor children are known to congregate, as defined by the supervising CCO" is unconditionally vague. *Id*. at 652, 655.  First, the court concluded that areas where "'children are known to congregate'" is sufficiently broad to require clarification.  *Id.* at 654.  The number of possible places where children may congregate, such as "'public parks, bowling alleys, shopping malls, theaters, churches, [and] hiking trails'" is so extensive and wide ranging that an ordinary person may not know what places to avoid.  *See Id.* at 654.  Second, a condition that explicitly requires further definitions from community corrections officers (CCOs)[2] leaves the condition vulnerable to arbitrary enforcement.  *Id.* at 655. Therefore, the court held that the condition failed under both prongs of the vagueness doctrine.  *Id*.

But Division One of this court recently held that a community custody provision that prohibits offenders from associating with known "'users or sellers of illegal drugs'" is not unconstitutionally vague.  *In re Pers. Restraint of Brettell*, 6 Wn. App. 2d 161, 169, 430 P.3d 677

---

[2] During a period of court-ordered community custody, an offender is under the supervision of the DOC.  RCW 9.94A.704(1).  The DOC, through its CCOs, are responsible for the supervision of sentenced offenders and monitoring sentence conditions.  RCW 9.94A.030(4).

(2018). The *Brettell* court relied on *United States v. Vega*, 545 F.3d 743, 749 (9th Cir. 2008), where the Ninth Circuit rejected a vagueness challenge to a similar condition that prohibited the offender from associating "'with any member of any criminal street gang.'" 6 Wn. App. 2d at 170. The *Vega* court acknowledged that "'incidental contacts'—such as those [an offender would] fear he would be punished for inadvertently engaging in—do not constitute 'association.'" 545 F.3d at 746 (quoting *United States v. Soltero*, 510 F.3d 858, 866-67 (9th Cir. 2007)). The *Vega* court held that the condition was constitutional but that the condition could be improved by adding the term "known" to limit its reach to people *known by the defendant* to be gang members. *Brettell*, 6 Wn. App. 2d at 170 (citing 545 F.3d at 749-50).

We agree with *Brettell*. Here, the condition prohibiting association "with known drug users/sellers" is not unconstitutionally vague. CP at 152. The condition does not explicitly require further definition or clarification from a CCO and the terms "known drug users/sellers" effectively notify a person of ordinary intelligence who needs to be avoided. CP at 152. The term "known" qualifies that the condition prohibits the *offender's knowing* contact with drug users and sellers. *Brettell*, 6 Wn. App. 2d at 170; *Vega*, 545 F.3d at 749-50. By limiting the condition's reach to those known by the offender, the condition provides fair warning of proscribed conduct and meaningful guidance to protect against arbitrary enforcement.

Accordingly, we hold that the trial court properly exercised its discretion by prohibiting Houck from associating with known drug users and sellers during his term of community custody because the condition is not unconstitutionally vague.

C. Marijuana Condition

Houck next argues that the trial court exceeded its statutory authority when it imposed the community custody condition prohibiting Houck from possessing or consuming medical marijuana because the Medical Use of Cannabis Act "(1) divest courts of any authority to impose conditions of community custody or probation that can subject a qualified medical marijuana user to criminal sanctions; and (2) directs supervising entities, like the [DOC], to establish a procedure before imposing a condition of community custody or probation that prohibits a qualified patient from using medical marijuana." Appellant's Opening Br. at 12-13. He bases this argument on public policy and three canons of statutory interpretation: expressio unius est exclusio alterius, noscitur a socis, and edjusdem generis, each of which we discuss below.

1.      *Standard of Review and Principles of Law*

A trial court lacks authority to impose a community custody condition unless authorized by the legislature. *State v. Warnock*, 174 Wn. App. 608, 611, 299 P.3d 1173 (2013). We review a trial court's statutory authority to impose a particular community custody condition de novo. *State v. Armendariz*, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

RCW 9.94A.703 states as follows:

When a court sentences a person to a term of community custody, the court *shall* impose conditions of community custody as provided in this section.
. . . .
(2) **Waivable conditions**. Unless waived by the court, as part of any term of community custody, the court shall order an offender to:
. . . .
(c) Refrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions.

(Emphasis added.) The definition of "controlled substance" is "a drug, substance, or immediate precursor included in Schedules I through V as set forth in federal or state laws, or federal or board

rules." Former RCW 69.50.101(2)(d) (2013). Marijuana is listed as a schedule I controlled substance. RCW 69.50.204(c)(22).

The Medical Use of Cannabis Act did not implicitly or explicitly repeal the statutory classification of marijuana as a schedule I controlled substance. *State v. Atchley*, 142 Wn. App. 147, 164-65, 173 P.3d 323 (2007); *State v. Hanson*, 138 Wn. App. 322, 330, 157 P.3d 438 (2007). Doctors are prohibited from issuing prescriptions for medical marijuana and are merely allowed to issue an "authorization" for medical marijuana use. Former RCW 69.51A.030(2)(a) (2011); former RCW 69.50.308 (2013).

2. *Statutory Interpretation*

Houck points out that former "RCW 69.51A.005(2)(b) [(2011)] explicitly states that the legislature intended for 'qualifying patients' who benefit from marijuana to not be subject to arrest, prosecution, or other criminal sanctions based on their use of medical marijuana" and argues that former RCW 69.51A.040 (2011) "reaffirms that such qualified patients are insulated from criminal consequences for their use of medical marijuana." Appellant's Opening Br. at 10-11. However, he concedes that both former RCW 69.51A.005(4) (2011) and RCW 69.51A.055(1) limit this protection. The statutes provide in relevant part,

> The arrest and prosecution protections established in RCW 69.51A.040 may not be asserted in a supervision revocation or violation hearing by a person who is supervised by a corrections agency or department, including local governments or jails, that has determined that the terms of this section are inconsistent with and contrary to his or her supervision.

RCW 69.51A.055(1)(a).

> Nothing in this chapter diminishes the authority of correctional agencies and departments, including local governments or jails, to establish a procedure for determining when the use of cannabis would impact community safety or the effective supervision of those on active supervision for a criminal conviction, nor

does it create the right to any accommodation of any medical use of cannabis in any correctional facility or jail.

Former RCW 69.51A.005(4).

Houck argues that these provisions divest courts of any authority to impose community custody conditions that subject a qualified medical marijuana user to criminal sanctions, and direct supervising entities, like the DOC, to establish a procedure before imposing a condition of community custody that prohibits a qualified patient from using medical marijuana.

First, Houck relies on "expressio unius est exclusion alterius," which means that the "Legislative inclusion of certain items in a category implies that other items in that category [were] intended to be excluded." *Bour v. Johnson*, 122 Wn.2d 829, 836, 864 P.2d 380 (1993). He suggests that we must presume that the legislature's omission of the term "court" in former RCW 69.51A.005(4) and RCW 69.51A.055(1)(a) was deliberate, and therefore courts do not possess the authority to impose a condition of community custody that can subject a medical marijuana user to criminal sanctions for their use of medical marijuana in conformity with former RCW 69.51A.040.

Second, Houck relies on noscitur a socis. Noscitur a socis "provides that a single word in a statute should not be read in isolation, and that 'the meaning of words may be indicated or controlled by those with which they are associated.'" *State v. Roggenkamp*, 153 Wn.2d 614, 623, 106 P.3d 196 (2005) (internal quotation marks omitted) (quoting *State v. Jackson*, 137 Wn.2d 712, 729, 976 P.2d 1229 (1999)).

Finally, Houck relies on edjusdem generis, which provides that "'[w]here general words follow specific words in a statutory enumeration, the general words are construed to embrace only objects similar in nature to those objects enumerated by the preceding words.'" *Dep't of Soc. &*

9

*Health Servs. v. Guardianship Estate of Keffeler*, 537 U.S. 371, 384, 123 S. Ct. 1017, 154 L. Ed. 2d 972 (2003) (internal quotation marks omitted) (quoting *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 114-15, 121 S. Ct. 1302, 149 L. Ed. 2d 234 (2001)).  Houck argues that the term "'local government'" should be read narrowly to mean something similar to the other words associated with the term, namely, "'correctional agencies'" and "'jails.'"  Appellant's Opening Br. at 17.

Houck's arguments rely on the assumption that former RCW 69.51A.005(4) and RCW 69.51A.055(1)(a) create an exhaustive list of which agencies or departments can impose community custody conditions regarding controlled substances.  However, the language of the statutes indicate otherwise.  "Nothing in this chapter diminishes the authority of correctional agencies and departments, including local governments or jails, to establish a procedure for . . . *the effective supervision* of those on active supervision for a criminal conviction."  Former RCW 69.51A.005(4) (emphasis added).  "The arrest and prosecution protections established in RCW 69.51A.040 may not be asserted *in a supervision revocation or violation hearing* by a person who is supervised by a corrections agency or department, including local governments or jails."  RCW 69.51A.055(1)(a) (emphasis added).  The statutes on which Houck relies apply to establishing procedures for "effective supervision" and to "supervision revocation or violation hearing[s]."  Former RCW 69.51A.005(4); RCW 69.51A.055(1)(a).  The imposition of community custody conditions fit into neither of these categories.

Houck also argues that RCW 69.51A.055(1)(a) grants supervising entities, not courts, exclusive authority to restrict medical marijuana use.  However, a supervising entity has the authority to execute only the court-imposed sentence by supervising offenders *on the basis* of conditions imposed by the court.  RCW 9.94A.030(4), .704(2)(b).  Furthermore, the DOC may

10

exercise its authority only by imposing an additional community custody condition when it does not interfere or contradict conditions imposed by the court. RCW 9.94A.704(6). Therefore, although such agencies or departments may have authority to impose community custody conditions regarding controlled substances, their authority is limited by conditions imposed by the trial court.

Houck's argument also implies that the Medical Use of Cannabis Act supersedes RCW 9.94A.703. We disagree. A court is required to impose the following condition unless it exercises its discretion to waive it: an offender must "[r]efrain from possessing or consuming controlled substances except pursuant to lawfully issued prescriptions." RCW 9.94A.703(2)(c). As noted above, the Medical Use of Cannabis Act did not implicitly or explicitly repeal the statutory classification of marijuana as a schedule I controlled substance. *Atchley*, 142 Wn. App. at 164-65; *Hanson*, 138 Wn. App. at 330. We conclude that the Act also does not supersede community custody conditions that trial courts "shall order" under RCW 9.94A.703(2). Therefore, we hold that Houck's argument fails and affirm the community custody condition.[3]

## II. LEGAL FINANCIAL OBLIGATIONS

The trial court ordered Houck to pay mandatory LFOs in the form of a $500 crime victim penalty assessment, a $200 criminal filing fee, and a $100 DNA collection fee. The trial court also ordered Houck to pay interest on his nonrestitution LFOs. Houck challenges the imposition of the $200 criminal filing fee and the $100 DNA collection fee, as well as the imposition of interest, on

---

[3] Because the Medical Use of Cannabis Act and the Sentencing Reform Act of 1981, ch. 9.94A RCW, can be harmonized, we do not reach Houck's rule of lenity or public policy arguments.

the basis that the trial court failed to consider his ability to pay those fees as required by RCW 9.94A.777(1) and based on recent statutory amendments that apply to his case.

The State concedes that the $200 criminal filing fee and the interest provision should be stricken from Houck's judgment and sentence, but the State maintains that the imposition of the DNA collection fee was proper because Houck failed to prove that the State has previously collected his DNA. *See* RCW 43.43.7541.

The legislature recently amended former RCW 36.18.020(2)(h) to prohibit the superior courts from imposing the $200 criminal filing fee and interest on the nonrestitution portions of LFOs on defendants found indigent under RCW 10.101.010(3)(a) through (c). LAWS OF 2018, ch. 269, § 17; RCW 36.18.020(2)(h); *State v. Ramirez*, 191 Wn.2d 732, 746, 426 P.3d 714 (2018). These statutory amendments apply to any case not yet final at the time of their passage. *Ramirez*, 191 Wn.2d at 747. Because the trial court found Houck to be indigent, we accept the State's concession and agree that the $200 criminal filing fee and imposition of interest should be stricken.

But we do not agree with the State's contention that the DNA collection fee was properly imposed. The State argues that we should not strike Houck's DNA collection fee because Houck fails to show that the State previously collected his DNA. A DNA collection fee is mandatory "*unless* the state has previously collected the offender's DNA as a result of a prior conviction." RCW 43.43.7541 (emphasis added); *Ramirez*, 191 Wn.2d at 747; *State v. Catling*, 193 Wn.2d 252, 257-58, 438 P.3d 1174 (2019). RCW 43.43.7541 requires the collection of a DNA sample from every adult or juvenile convicted of a felony. Houck has a prior felony conviction, but the record on appeal is silent as to whether the State previously collected his DNA. If such collection occurred, the trial court's imposition of the DNA collection fee was improper.

We remand to the trial court to determine whether the State has previously collected a DNA sample from Houck. The trial court, on remand, shall strike the DNA collection fee unless the State demonstrates that Houck's DNA has not been collected.[4]

Houck also contends that the trial court failed to inquire whether he had the means to pay LFOs based on his mental condition, relying on our opinion in *State v. Tedder*, 194 Wn. App. 753, 378 P.3d 246 (2016). At sentencing, Houck presented evidence that he suffers from chronic and severe mental health disorders. Before imposing any LFO, excluding restitution and the victim penalty assessment, the trial court must determine whether a defendant who suffers from a mental health condition has the ability to pay the obligations. RCW 9.94A.777(1); *Tedder*, 194 Wn. App. at 756-57. A defendant suffers from a mental health condition when the defendant has been diagnosed with a mental disorder that prevents him from participating in gainful employment. RCW 9.94A.777(2). Based on the evidence Houck presented at sentencing, the trial court was required to consider, under RCW 9.94A.777(1), whether Houck has the means to pay LFOs. Because the trial court did not consider evidence of Houck's mental conditions before imposing LFOs, we hold that the trial court abused its discretion.

---

[4] At oral argument, the parties disagreed about who should bear the burden of demonstrating whether a defendant's DNA has previously been collected when the defendant has a prior Washington felony conviction. The State urged us to hold it is the defendant's burden to demonstrate that the State has not previously collected his DNA. We disagree and hold that when a defendant has a prior Washington felony conviction, the State must show that the defendant's DNA has not previously been collected. *See State v. Van Wolvelaere*, ___ Wn. App. 2d ___, 440 P.3d 1005, 1007 (2019) (holding that the defendant's prior Washington State felony convictions give rise to a presumption that the State previously collected a DNA sample from the defendant).

On remand, if the trial court finds that the State has not previously collected Houck's DNA, the trial court must then consider whether the DNA collection fee should be waived after performing the necessary inquiry under RCW 9.94A.777.

## CONCLUSION

We affirm the trial court's imposition of a community custody condition that prohibits Houck from associating with known drug users and sellers during his term of community custody. We hold that the trial court had statutory authority to impose a community custody condition prohibiting Houck from possessing or consuming medical marijuana under the Medical Use of Cannabis Act during his term of community custody and affirm the condition. Finally, we remand to the trial court to strike the $200 criminal filing fee and interest provision and to reconsider the imposition of DNA collection fee consistent with this opinion.

CRUSER, J.

We concur:

WORSWICK, J.

LEE, A.C.J.